## PennDOT v. McGarvey

■■■

*Richelle Sanders Fisher* and *Donald H. Poorman,*
for the commonwealth.

*Lawrence T. Foti,* for defendant.

WRIGHT, *S.J.,* January 9, 1990 — On May 12, 1989, Lorraine McGarvey was stopped by Officer Robert Gray of the Upper Chichester Township Police Department while she was driving northbound on Interstate 95. Defendant was subsequently placed under arrest for operating a vehicle under the influence of alcohol and refused to take a breathalyzer test, which resulted in an administrative suspension under the provisions of 75 Pa.C.S. §1547(b). A timely appeal was taken to this court and resulted in a hearing on October 30, 1989. At the conclusion of the hearing this court sustained the appeal and the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing has filed an appeal to the Commonwealth Court, necessitating the writing of this opinion.

Officer Gray testified that he saw defendant's vehicle traveling 75 miles per hour in a 55-mph zone and changing lanes without the proper signal. Officer Gray stopped the vehicle and said that he

detected an odor of alcohol and saw defendant's glassy, bloodshot eyes, and that defendant spoke with slurred speech. Officer Gray asked defendant to step out of the car and then administered several field sobriety tests. Defendant was then placed under arrest and taken to police headquarters. Although the validity of the field sobriety tests are questioned by the licensee, we find there was probable cause to make an arrest.

Officer Gray testified that he advised defendant that there was an implied consent that she submit to chemical testing of her breath, blood or urine, that defendant did not have to take this test, but if she did not, defendant would lose her license for a period of 12 months. Defendant responded that she wished to speak to her lawyer prior to taking the test. In response to the question, "How did you respond to her request to speak to her lawyer?" the officer testified, "Well, I told her that she didn't — it wasn't necessary that she speak to a lawyer before taking this test. Basically, that I wanted a yes/no answer whether she wanted to take it or not. I believe at one point, I told her that she could even make a call and call her lawyer, but I don't believe she had one at the time that she could call."

The officer testified that he had not given defendant any *Miranda* warnings at this point. The officer testified that he told defendant that if she refused to take the breathalyzer test she would lose her license for a period of 12 months automatically, and even if she refused the test, she would still be under arrest for driving under the influence and could face possible suspension of her license or a conviction for drunk driving. Officer Gray testified that he did not recall if he had advised defendant what would happen if she took the test.

Defendant testified that she did poorly on the field

sobriety tests because of her nervousness; being in close proximity to numerous cars going at a high rate of speed; and because she was wearing high heels, which interfered with her ability to walk. Defendant also testified that when asked to take the breathalyzer test the officer told her she would definitely lose her license for a year if she did not take the test, but that if she did, it would only be suspended for three months, and if she took the test and passed it, she could leave. In response to the question, "What about this thing about a lawyer?" defendant said, "Well, I said I didn't want to take it, I wanted to speak to a lawyer first, and he said I couldn't speak to a lawyer, I had to answer yes or no then." Subsequently, defendant said the officer told her she could talk to a lawyer.

In license suspension cases, the commonwealth must first establish that the driver:

(1) Was arrested for driving while under the influence of alcohol;

(2) Was asked to submit to a breathalyzer test;

(3) Refused to do so; and

(4) Was specifically warned that a refusal would result in revocation of his driver's license. *Commonwealth, Department of Transportation v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

Once the commonwealth meets its burden it is the driver's responsibility to prove that he or she was not capable of making a knowing and conscious refusal to take the test.

In *Commonwealth, Department of Transportation v. O'Connell, supra,* the Supreme Court was faced with the case in which a police officer advised a defendant, charged with driving under the influence of alcohol, of his *Miranda* rights and as soon as the defendant asked for an attorney, advised him of his obligation under the implied consent law to

provide a chemical test sample. The driver refused to consent and his license was suspended. In sustaining the driver's appeal of the subsequent license suspension, the court stated:

"[W]here an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights [*Miranda* rights] are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test." *Miranda, supra.* (comment in brackets supplied)

In *O'Connell,* the court was faced with a somewhat different factual situation than we are faced with in this case. O'Connell was advised of his *Miranda* rights. Defendant was not advised of her *Miranda* rights but was under the belief that she had the right to ask for an attorney.

We have to take note of the fact that the litany prescribed in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), has become part of our popular culture. One can hear the *Miranda* rights read, with varying degrees of accuracy, in almost any television story or movie dealing with the police. The average citizen has some understanding of the fact that he or she has the right to a lawyer after he or she has been arrested.

We read the Supreme Court's opinion in *Commonwealth, Department of Transportation v. O'Connell, supra,* as being intended to set forth flat instructions to police officers in this commonwealth as to how they are to explain to persons under arrest the lack of a right to counsel under the implied consent law. The Supreme Court was quite evi-

dently disturbed by the indications that, "[M]any individuals are being deprived of their license because of their confusion over when they can or cannot ask for an attorney." The Supreme Court does not say that where an officer has first read *Miranda* rights to a defendant, he must then instruct the arrestee that the rights are not applicable to the breathalyzer test. The court states that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police must instruct the arrestee that the rights to counsel are inapplicable for the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test. A police officer who follows such a procedure cannot cause confusion, and an arrestee cannot be confused.

Factually, we find that no such information was imparted to defendant. Defendant may have been told that she could not speak to a lawyer, but she was not told that her right to speak to a lawyer did not extend to the breathalyzer test. Defendant was told by the officer that he wanted a yes-or-no decision whether she going to take the test or not and that she could not speak to a lawyer. That is not the same as telling her that she did not have the right to consult with an attorney nor anyone else prior to taking the test.

The confusion that this may have caused was, if anything, increased by the fact that the officer apparently advised her that she was going to lose her license for a year if she refused to take the test but would be suspended for three months if she took the test. The officer did not have any recollection of precisely what he said on the latter point, but this court finds defendant's testimony credible that he did make such a statement and believes that this

statement also increased defendant's confusion and understandable desire to speak to a lawyer.

For these reasons, we feel that defendant was not able to make a knowing refusal to take the test and we sustained the appeal.